## IN THE UNITED STATES COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

CARMEN GARCIA-SIERRA,　　　　:　　CIVIL ACTION
　　　　　　　　　　　　　　　　:
　　　　　　　　Plaintiff　　　　:
　　　　　　　　　　　　　　　　:
　　　　v.　　　　　　　　　　　:
　　　　　　　　　　　　　　　　:
KILOLO KIJAKAZI, Acting　　　　:　　No. 21-cv-00458-RAL
Commissioner of Social Security,[1]　:
　　　　　　　　　　　　　　　　:
　　　　　　　　Defendant　　　　:

**RICHARD A. LLORET**
**U.S. MAGISTRATE JUDGE**　　　　　　　　　　**January 5, 2023**

### MEMORANDUM OPINION

The Commissioner of Social Security, through the decision of an Administrative Law Judge ("ALJ"), denied Carmen Garcia-Sierra's ("Ms. Garcia's") application for disability insurance benefits ("DIB"). This appeal followed. For reasons explained below I will reverse the ALJ's decision and remand for further proceedings.

### PROCEDURAL HISTORY

On June 25, 2019, Plaintiff filed an application for DIB alleging disability beginning October 1, 2018. R. 15.  The state agency denied the application. *Id*. Ms. Garcia requested and received an administrative hearing, at which Ms. Garcia (represented by counsel) and a vocational expert testified. *Id*. The ALJ issued a decision finding that Ms. Garcia retained the residual functional capacity ("RFC") to perform sedentary work, with some additional restrictions. R. 21-30. The ALJ determined that Ms. Garcia was able to perform her past relevant work as a clerk-typist and an eligibility

---

[1] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Kilolo Kijakazi should be substituted for Andrew Saul as Defendant. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

worker, both of which qualify as sedentary work. *Id.* at 30. Accordingly, the ALJ concluded that Ms. Garcia was not disabled. *Id.* at 31. Ms. Garcia appealed, but the Appeals Council affirmed the ALJ's decision. *Id.* at 1. Ms. Garcia then timely filed a request for review in this court. Doc. No. 1.

## FACTUAL BACKGROUND

### A. The Claimant's Background

Ms. Garcia was 53 years old on the date of her alleged disability onset, making her "closely approaching advanced age" under the regulations. R. 208; 20 C.F.R. § 404.1563(d). In 2020 Ms. Garcia turned 55 and became a "person of advanced age." 20 C.F.R. § 404.1563(e). She had two years of college. R. 244. Ms. Garcia's past relevant work qualified as substantial gainful activity. R. 31.

### B. The ALJ's Decision

The ALJ found that Ms. Garcia was not eligible for DIB because she has not been under a disability, as defined by the Social Security Act. R. 31. In reaching this decision, the ALJ made the following findings of fact and conclusions of law pursuant to Social Security's five-step sequential evaluation process.[2]

At step one, the ALJ concluded that Ms. Garcia had not engaged in substantial gainful activity ("SGA") since the alleged onset date. R. 17. At step two, the ALJ determined that Ms. Garcia had the following severe impairments: diabetes with hyperglycemia and bilateral lower extremity neuropathy; lumbar spine disorder;

---

[2] An ALJ evaluates each case using a sequential process until a finding of "disabled" or "not disabled" is reached. The sequence requires an ALJ to assess whether a claimant: (1) is engaging in substantial gainful activity; (2) has a severe "medically determinable" physical or mental impairment or combination of impairments; (3) has an impairment or combination of impairments that meet or equal the criteria listed in the social security regulations and mandate a finding of disability; (4) has the residual functional capacity to perform the requirements of her past relevant work, if any; and (5) is able to perform any other work in the national economy, taking into consideration her residual functional capacity, age, education, and work experience. *See* 20 C.F.R. §§ 404.1520(a)(4)(i)–(v).

cervical spine disorder; bilateral shoulder disorder. *Id*. The ALJ determined that Ms. Garcia's depression and anxiety did not qualify as "severe." *Id*. at 18. At step three, the ALJ compared Ms. Garcia's impediments to those contained in the Social Security Listing of Impairments ("listing").[3] The ALJ found that Ms. Garcia did not meet any listing criteria. *Id*. at 20.

Prior to undertaking his step four analysis, the ALJ assessed Ms. Garcia's residual functional capacity ("RFC"), or "the most [Ms. Garcia] can still do despite [her] limitations." 20 C.F.R. §§ 404.1545(a)(1). The ALJ found that Ms. Garcia had the RFC to perform sedentary work, as defined in 20 C.F.R. 404.1567(a),[4] except that she is limited to

- occasionally using foot controls and frequently using hand controls;

- occasionally reaching overhead and frequently reaching in other directions;

- frequently handling and fingering;

- never climbing ladders, ropes, or scaffolds, and performing other postural activities no more than occasionally;

- occasionally being exposed to unprotected heights, moving mechanical parts, extreme temperatures, humidity and wetness, and vibration.

---

[3] The regulations contain a series of "listings" that describe symptomology related to various impairments. *See* 20 C.F.R. Pt. 404, Subpt. P., App. 1. If a claimant's documented symptoms meet or equal one of the impairments, "the claimant is conclusively presumed to be disabled." *Bowen v. Yuckert*, 482 U.S. 137, 141 (1987). If not, the sequential evaluation continues to step four, where the ALJ determines whether the impairments assessed at step two preclude the claimant from performing any relevant work the claimant may have performed in the past. *Id*.

[4] Sedentary work capacity is defined at 20 C.F.R. § 404.1567(a):

> Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

*See also* SSR 83-10.

R. 21. At step four, relying on this RFC and the testimony of the vocational expert, the ALJ found that Ms. Garcia had the RFC to perform her relevant past work, which resulted in a finding that Ms. Garcia was not disabled. R. 30, 31.

Ms. Garcia contends the ALJ erred by relying on lay opinion to evaluate Ms. Garcia's mental impairment, making multiple errors in evaluating the medical opinion evidence, and by receiving his appointment in violation of the Separation of Powers Clause of the United States Constitution. Plaintiff's Brief ("Pl. Br.") at 2.

## LEGAL STANDARDS

My review of the ALJ's decision is deferential. I am bound by his findings of fact to the extent those findings are supported by substantial evidence in the record. *Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000) (citing *Plummer v. Apfel*, 186 F.3d 422, 427 (3d Cir. 1999)). My review of the ALJ's findings of fact is limited to determining whether substantial evidence supports the ALJ's decision. *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999) (citing 42 U.S.C. § 405(g)).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). Substantial evidence "is more than a mere scintilla but may be less than a preponderance." *Brown v. Bowen*, 845 F.2d 1211, 1213 (3d Cir. 1988). I must rely on the record developed during the administrative proceedings along with the pleadings in making my determination. *See* 42 U.S.C. § 405(g). I may not weigh the evidence or substitute my own conclusions for those of the ALJ. *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 359 (3d Cir. 2011).

The ALJ's legal conclusions and application of legal principles are subject to plenary review. *See Krysztoforski v. Chater*, 55 F.3d 857, 858 (3d Cir. 1995). I must

determine whether the ALJ applied the proper legal standards in reaching the decision. *See Coria v. Heckler*, 750 F.2d 245, 247 (3d Cir. 1984). Accordingly, I may overturn an ALJ's decision based on an incorrect application of a legal standard even where I find that the decision otherwise is supported by substantial evidence. *Payton v. Barnhart*, 416 F. Supp. 2d 385, 387 (E.D. Pa. 2006) (citing *Friedberg v. Schweiker*, 721 F.2d 445, 447 (3d Cir. 1983)).

## DISCUSSION

### 1.  At step two it was error to find Ms. Garcia's depression and anxiety "non severe," but the error was harmless.

Dr. Sheri Balsam, Psy.D., a consulting examiner, and Dr. Marci Cloutier, Ph.D., who reviewed Ms. Garcia's records, were retained by the Bureau of Disability Determination[5] to evaluate Ms. Garcia's mental health. R. 613-619 (Dr. Balsam's report); 89-91 (Dr. Cloutier's report). Both opined that Ms. Garcia suffered from depression and anxiety. *Id*. at 91, 616. Dr. Balsam opined that Ms. Garcia had mild to moderate functional limitations in the realm of understanding, remembering, and carrying out instructions, and moderate to marked limitations in the realm of her ability to work with supervisors, co-workers and the public. R. 617-18. Dr. Cloutier diagnosed unspecified depressive disorder and unspecified anxiety disorder and opined that Ms. Garcia had mildly impaired attention and memory. Id. at 91. Dr. Cloutier also opined that Ms. Garcia's condition was "non severe." R. 90. The ALJ discounted Dr. Balsam's opinion and held that Ms. Garcia's mental condition was not severe, at step two of the sequential process. R. 19, 29.

> At step two, the ALJ considers whether the claimant has any "severe medically determinable physical or mental impairment" that meets certain regulatory requirements. *Id*. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). A "severe impairment"

---

[5] The state agency tasked by Social Security with making disability determinations in the first instance.

is one that "significantly limits [the claimant's] physical or mental ability to do basic work activities[.]" *Id.* §§ 404.1520(c), 416.920(c).

*Hess v. Commissioner Social Security*, 931 F.3d 198, 201 (3d Cir. 2019). The ALJ discounted Dr. Balsam's opinion because evidence of mental health problems was absent in other sources, such as hospital records, treating physician records, even Ms. Garcia's testimony. R. 29. There is no record of inpatient or outpatient therapy. R. 91. The only evidence in the record of mental health treatment is a reference in Ms. Garcia's treating physician notes to a 30-day prescription for Buspar[6] in 2020, to be taken once a day as needed. R. 705.

As Judge Yohn wrote in *McClease v. Comm'r of Soc. Sec.*,

> The severity test at step two is a *de minimis* screening device to dispose of groundless claims. The ALJ will generally find a condition to be severe if it has any significant effect on a claimant's ability to work. . . As the Third Circuit has explained, although the standard for substantial evidence at step two is the same as at all other steps, *because step two is to be rarely utilized as basis for the denial of benefits . . . its invocation is certain to raise a judicial eyebrow.*

2009 WL 3497775, at *4 (E.D. Pa. 2009) (internal citations and quotations omitted, emphasis added). "If the evidence presented by the claimant presents more than a 'slight abnormality,' the step-two requirement of 'severe' is met, and the sequential evaluation process should continue. Reasonable doubts on severity are to be resolved in favor of the claimant." *Newell v. Comm'r of Soc. Sec.*, 347 F.3d 541, 546-47 (3d Cir. 2003).

At step two it is error for the ALJ to weigh the evidence in the claimant's favor against the unfavorable opinions of a consulting and reviewing examiner. *See Magwood v. Comm'r of Soc. Sec.*, 417 Fed. Appx. 130, 132 (3d Cir. 2008). Which means that

---

[6] Buspar is prescribed as an anti-anxiety medication. *See* https://www.mayoclinic.org/drugs-supplements/buspirone-oral-route/description/drg-20062457 (Mayo Clinic description of Buspar, accessed 12/13/2022).

weighing and discounting the favorable (to claimant) opinion of the only mental health specialists to have examined Ms. Garcia was error, at step two. While *Magwood* was not precedential, the opinion of Judges Smith, McKee and Scirica carries weight. Step two involves a search in the record for credible evidence of severity, not a weighing of conflicting evidence. The bar is set low – deliberately so. The weighing of conflicting evidence comes later in the process, at steps three through five. I conclude that it was error for the ALJ to find Ms. Garcia's mental condition non-severe at step two.

Not every error requires a remand. Harmless error analysis applies to the review of agency decisions. *See Shinseki v. Sanders*, 556 U.S. 396, 407-10 (2009) (harmless error analysis applied to review of VA administrative determination); *see Rutherford v. Barnhart*, 399 F.3d 546, 552-53 (3d Cir. 2005) (applying harmless error analysis when reviewing a Social Security appeal); *Woodson v. Commissioner Social Security*, 661 Fed. Appx. 762, 767 (3d Cir. 2016) (same). The failure to find a condition severe, at step two, can be harmless when the condition – albeit characterized as non-severe - was considered by the ALJ when evaluating defendant's limitations at steps three through five. *See Orr v. Commissioner Social Security*, 805 Fed. Appx. 85, 88 (3d Cir. 2020) ("because the ALJ progressed to a later step, any error at Step Two would not alter the remainder of the five-step process, much less the overall outcome"); *Richards v. Astrue*, 2010 WL 2606523, at *6 (E.D. Pa. 2010) ("Where at least one impairment is found to be 'severe' and all limitations (including those resulting from 'non-severe' impairments) are reflected in the ultimate residual functional capacity determination, any error committed at the second step of the sequential evaluation process can fairly be characterized as harmless.") (citing to *Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007); *Maziarz v. Sec'y of Health & Human Servs.*, 837 F.2d 240, 244 (6th Cir. 1987)). *Magwood* does not contradict these cases, because in *Magwood* the ALJ's sequential

analysis ended at step two. 417 Fed. Appx. at 131. That meant there was no analysis at steps three through five to cure the error.

The ALJ in this case said he "considered all of the claimant's medically determinable impairments, including those that are not severe, when assessing the claimant's residual functional capacity." R. 18. That is not empty boilerplate. The ALJ explained his reasons for discounting Dr. Balsam's report in both the 10-page discussion of his step four findings and the 3-page discussion of his step two findings. R. 17-21; 21-30. That would ordinarily end the discussion and result in a finding of harmless error, but another problem intrudes. Ms. Garcia contends that by discounting the two psychologists' opinions the ALJ relied on his lay opinion to determine that Ms. Garcia had no mental limitations. Pl. Br. at 9.

An RFC that is entirely unsupported by medical opinion evidence may be in serious jeopardy. *See Doak v. Heckler*, 790 F.2d 26, 29 (3d Cir. 1986) (holding that "[n]o physician suggested that the activity [the claimant] could perform was consistent with the definition of light work set forth in the regulations, and therefore the ALJ's conclusion that he could is not supported by substantial evidence.")). An ALJ is not free to base his RFC on his own lay opinion about medical issues. *See Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir. 1999); *Frankenfield v. Bowen*, 861 F.2d 405, 408 (3d Cir. 1988); *Ferguson v. Schweiker*, 765 F.2d 31, 37 (3d Cir. 1985). But neither is an ALJ "required to base the RFC on a specific medical opinion[,] because the RFC is a decision for the ALJ, not a doctor." *Chandler*, 667 F.3d at 360.

*Chandler* involved an ALJ who chose to rely on one medical opinion instead of another. *Doak* involved an ALJ who disregarded all the available medical evidence, which consisted only of opinion evidence, when constructing an RFC. *See Cleinow v. Berryhill*, 311 F.Supp.3d 683, 686 (E.D. Pa. 2018). *Brown v. Astrue*, 649 F.3d 193 (3d

Cir. 2011), like *Chandler*, involved conflicting medical opinion evidence. The court concluded that because "the ALJ clearly explained why she gave greater weight to the opinion of [the medical expert], her decision was supported by substantial evidence and was not contrary to the law." *Id.* at 196.

There is a tension between *Doak* and *Chandler*, though they can be harmonized.[7] The problem addressed in *Doak* was that no medical source opined that the claimant was capable of light work[8] and there was no other medical evidence, beside the opinions, in the record. The court held that the ALJ was not qualified to make a medical assessment about what physical limitations attended the patient's medical condition, after ignoring all the available medical evidence. In contrast, in both *Chandler* and

---

[7]District courts in this circuit have taken varying positions on the proper balance between *Chandler* and *Doak*. As one court put it,

> In a slew of decisions, the Third Circuit holds that no reasonable mind would find the ALJ's evidence to be adequate when the ALJ rejects every medical opinion in the record with only lay reinterpretation of medical evidence. *See Frankenfield v. Bowen,* 861 F.2d 405, 408 (3d Cir. 1988); *Doak v. Heckler,* 790 F.2d 26, 29–30 (3d Cir. 1986); *Ferguson v. Schweiker,* 765 F.2d 31, 37, 36–37 (3d Cir. 1985); *Kent v. Schweiker,* 710 F.2d 110, 115 (3d Cir. 1983); *Van Horn v. Schweiker,* 717 F.2d 871, 874 (3d Cir. 1983); *Kelly v. R.R. Ret. Bd.,* 625 F.2d 486, 494 (3d Cir. 1980); *Rossi v. Califano,* 602 F.2d 55, 58–59, (3d Cir. 1979); *Fowler v. Califano,* 596 F.2d 600, 603 (3d Cir. 1979); *Gober v. Matthews,* 574 F.2d 772, 777 (3d Cir. 1978). These cases also recognize the special deference owed to medical opinions from treating sources ("treating source rule"). *Id.* No subsequent binding precedential Third Circuit decision or enactment overrules these cases. These cases remain binding precedent.

*Burns v. Colvin,* 156 F.Supp.3d 579, 583 (M.D. Pa. 2016). Some courts have held that *Doak*'s language about the need for medical opinion evidence is *dicta*. *See Doty v. Colvin,* 2014 WL 29036, at *1 n. 1 (W.D. Pa. 2014); *Cummings v. Colvin,* 129 F.Supp.3d 209, 214–17 (W.D. Pa. 2015) (citing cases). Other courts have held that *Doak* is binding precedent, and that *Chandler*'s arguably conflicting language was *dicta*. *See Burns,* 156 F.Supp.3d at 595-96; *Newman v. Saul,* 2020 WL 881021, at *6 (M.D. Pa. 2020); *Gostomski v. Saul,* 2019 WL 5692776, at *4 (M.D. Pa. 2019); *Cowden v. Colvin,* 2017 WL 1227454, at *13 (collecting cases) (M.D. Pa. 2017). Some courts have reconciled the holdings in *Doak* and *Chandler* through careful factual analysis. *See Sparacio v. Kijakazi,* 2022 WL 4635859, at *8–9 (E.D. Pa. 2022); *Samsel v. Kijakazi,* 2022 WL 4120154, at *10 (M.D. Pa. 2022); *Daniels v. Saul,* 2021 WL 780726, at *2 (E.D. Pa. 2021). Perhaps it suffices to say, with Judge Yohn, that while an ALJ may discount a physician's opinion on a plaintiff's physical limitations, and rely on other types of medical evidence, "the lack of any contradicting opinion makes the ALJ's failure to articulate the basis for her findings more troubling." *Dyson v. Astrue,* 2010 WL 2640143, at *6 (E.D. Pa. 2010) (Yohn, J.).

[8] The court noted that one physician concluded that the claimant was disabled, another said he was capable of sedentary work, and the third did not opine as to Doak's ability to work. *Doak,* 760 F.2d at 29. Because no physician concluded that Doak was capable of performing light work, the Court concluded that the RFC was not supported by substantial evidence. *Id.*

*Brown,* the record included medical opinions, as well as other medical evidence, that supported the ALJ's RFC.

*Doak* does not mean that the ALJ's determination of mental limitations, as part of his RFC determination in this case, cannot be supported unless the ALJ adopts a physician's opinion, lock, stock, and barrel. *See Chandler*, 667 F.3d at 362; *Cleinow*, 311 F.Supp.3d at 686 ("*Doak* does not mean that an ALJ cannot make an RFC determination in the absence of a medical opinion reaching the same conclusion."). That would contradict the regulations which *require* an ALJ to consider a variety of evidence in determining the RFC. *See* 20 C.F.R. § 404.1545; SSR 96-8p, 1996 WL 374184 (1996).[9]

Here, the ALJ explained his reasons for discounting the opinion evidence of Dr. Balsam, based on the absence of any history of psychological treatment or impairment in the voluminous medical treatment records before the ALJ. My own review of the records turned up one 30-day trial of Buspar, an anti-anxiety medication, with no accompanying notes containing a diagnosis. R. 705. That is insubstantial. The ALJ relied on a variety of medical evidence, or more precisely, the absence of any diagnostic or treatment history of depression and anxiety, to reach his RFC determination in this case. *See* R. 17-31. And as the ALJ noted, R. 18, he asked counsel for Ms. Garcia at the

---

[9] The RFC assessment must be based on *all* of the relevant evidence in the case record, such as:
   * Medical history,
   * Medical signs and laboratory findings,
   * The effects of treatment, including limitations or restrictions imposed by the mechanics of treatment (e.g., frequency of treatment, duration, disruption to routine, side effects of medication),
   * Reports of daily activities,
   * Lay evidence,
   * Recorded observations,
   * Medical source statements,
   * Effects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment,
   * Evidence from attempts to work,
   * Need for a structured living environment, and
   * Work evaluations, if available.
1996 WL 374184, at *5.

hearing "is the Claimant alleging a severe mental impairment?" R. 43 (transcript of hearing). To which counsel responded "No, it's her physical impairments that would really prevent her from working." *Id*. This concession was not as lethal as it would be in ordinary litigation, given the non-adversarial nature of administrative proceedings before the Social Security Administration. *See Cirko on behalf of Cirko v. Commissioner of Social Security*, 948 F.3d 148, 157 (3d Cir. 2020) (the non-adversarial nature of Social Security proceedings means that issue exhaustion is not required). But the ALJ was entitled to consider it, in addition to the absence of any record of treatment and any testimony from Ms. Garcia about her mental condition.

Plaintiff argues that the ALJ improperly discounted Dr. Cloutier's finding, that Ms. Garcia suffered from mild limitations in her ability to understand, remember, and apply instructions, and in her ability to interact with others, maintain concentration, persistence, and pace. Pl. Br. at 3 (citing R. 91). The ALJ found that some of Dr. Cloutier's findings were "overstated," for the same reasons the ALJ discounted Dr. Balsam's findings. R. 30.

The net of all this is that

- The ALJ committed legal error by finding that Ms. Garcia's mental condition was not "severe," at step two.

- Save the two psychologists' reports, the record contained no substantial evidence that Ms. Garcia treated for, was diagnosed with, or complained of psychological problems.

- Ms. Garcia's non-psychological impairments resulted in an RFC which put her a razor's edge away from disability, given her age and limitation to a limited range of sedentary work. Pl. Br. at 7.

- The only two psychological specialists[10] who evaluated Ms. Garcia's mental condition agreed that she had at least mild limitations in various domains of psychological functioning, though one opined Ms. Garcia's condition was not "severe."

- *Doak* and cases following *Doak* suggest that completely disregarding the limitations proposed in the two psychological evaluations when fixing the RFC was inappropriate.

- *Chandler* and cases following *Chandler* suggest it is appropriate for the ALJ to consult the entire record and disagree with a specialist's proposed limitations.

*Kotteakos v. United States*, 328 U.S. 750 (1946), analyzed at length in *Shinseki*, provides the standard for harmless error:

> If, when all is said and done, the conviction is sure that the error did not influence the [finder of fact], or had but very slight effect, the . . . judgment should stand . . . But if one cannot say, with fair assurance, after pondering all that happened without stripping the erroneous action from the whole, that the judgment was not substantially swayed by the error, it is impossible to conclude that substantial rights were not affected. The inquiry cannot be merely whether there was enough to support the result, apart from the phase affected by the error. It is rather, even so, whether the error itself had substantial influence. If so, or if one is left in grave doubt, the conviction cannot stand.

328 U.S. at 764-65.

I find the step two error was harmless. The ALJ was crystal clear that he disregarded the limitations suggested by the psychologists because the record was otherwise bereft of any indication that Ms. Garcia's psychological condition imposed functional limitations on her ability to work. His weighing of the evidence was reasonable. The ALJ grappled with conflicting evidence and explained his resolution of

---

[10]  Specialists retained by the reviewing agency, not the plaintiff.

the conflicts clearly. I conclude "with fair assurance, after pondering all that happened without stripping the erroneous action from the whole, that the judgment was not substantially swayed by the error[.]" *Kotteakos*, 328 U.S. at 765. Appropriate deference to the fact-finding role of the ALJ prompts my finding.

### 2. The ALJ did not err when considering Dr. Goodyear's opinion.

The ALJ imposed some manipulative restrictions, as part of the RFC: Ms. Garcia could no more than "occasionally" reach overhead and no more than "frequently" handle or finger. R. 21. Ms. Garcia contends the ALJ erred by rejecting the manipulative restrictions recommended by Dr. Goodyear, who examined Ms. Garcia and submitted a report. Pl. Br. at 9; R. 403-419 (Dr. Goodyear's report). Dr. Goodyear recommended that Ms. Garcia be limited to never reaching overhead, and no more than occasionally performing other manipulative functions with her right hand; with her left arm and hand he recommended Ms. Garcia be limited to never reaching overhead, no more than occasionally reaching in all other directions, and no more than frequently handling, fingering and feeling. R. 28; 413.

The ALJ explained that Ms. Garcia's electromyogram ("EMG") showed only mild carpal tunnel syndrome, and Dr. Goodyear found only "slightly diminished" right wrist range of motion, but otherwise intact hand function. R. 24-25; *see* 417 (reporting range of motion). Dr. Goodyear reported that Ms. Garcia's "hand and finger dexterity [was] intact, synchronous and coordinated. [Her] grip strength [was] 5/5 bilaterally. [She] displayed a normal ability to zipper, button, and tie." R. 409; *see* 24. The ALJ noted Drs. Bermudez' and Bonita's reports, which recommended no manipulative restrictions except for overhead reaching. R. 29; 77 (Dr. Bermudez' report); 94 (Dr. Bonita's report). The ALJ concluded that the medical evidence, taken as a whole, warranted more manipulative restrictions than recommended by the reviewing physicians but less than

the consulting examiner. R. 28-29. His conclusion was reasonable, reasonably articulated, and supported by substantial evidence. I find no error.

3. **The ALJ did not adequately explain his reasons for disregarding Dr. Berger's opinion.**

Ms. Garcia contends that the ALJ failed to adequately explain his reasons for rejecting the opinion of Dr. Berger, Ms. Garcia's treating physician. Pl. Br. at 11. Dr. Berger opined that Ms. Garcia experienced pain and other symptoms constantly and was able to sit or stand less than 2 hours during an 8-hour workday. R. 773. The doctor said Ms. Garcia would have to be able to shift positions at will between sitting, standing, and walking, and would need to take unscheduled breaks 3-4 times during an 8-hour day. R. 774. She would, Dr. Berger stated, be absent from work more than 3 times per month. *Id.*

Dr. Berger treated Ms. Garcia since 2014. R. 556. As Ms. Garcia's treating physician, the ALJ found that Dr. Berger was "afforded unique insight into the claimant's longitudinal medical history as well as her present functioning." R. 30. Nevertheless, the ALJ completely discounted Dr. Berger's opinion as unpersuasive, explaining that "Dr. Berger's extreme limitations are inconsistent with his own treatment records in Exhibits 17F and 22F." R. 30. That is all the ALJ said, by way of explanation. The problem is that there is substantial evidence contradicting the ALJ's summary conclusion within the two exhibits he mentioned, and I cannot meaningfully review what the ALJ made of the contradictory evidence. *See* R. 444-556 ("Exhibit 17F") and 699-716 ("Exhibit 22F").

Ms. Garcia's diagnosis was cervical radiculopathy, acute sciatica, back pain, lumbar radiculopathy, and polyneuropathy due to type two diabetes mellitus. R. 463 (August 22, 2018). As the Cleveland Clinic explains,

> [n]erve damage from peripheral neuropathy can cause malfunctions in how and
> when nerves send pain signals, making pain signals more intense (hyperalgesia)
> or happen too easily (allodynia). It can even cause nerves to generate pain signals
> spontaneously. This is known as "neuropathic" pain, and it's the most noticeable
> and disruptive symptom of peripheral neuropathy.

https://my.clevelandclinic.org/health/diseases/14737-peripheral-neuropathy

(accessed 1/3/2023).

Ms. Garcia's list of medications was forbidding. Of more than a dozen listed, four of them were for pain: Lyrica (pregabalin)[11] (an anti-convulsant prescribed for nerve pain), meloxicam[12] (a non-steroidal anti-inflammatory prescribed for pain and swelling), Naprosyn (naproxen[13] - same), and Tramadol[14] (an opiate used to treat moderate to severe pain). R. 446, 448, 450, 452, 454. It is not apparent to me what the inconsistency is between the treatment notes, documenting years of treatment for chronic pain, and the pain related limitations found in Dr. Berger's report.

The Commissioner does a meticulous job of pointing out what the ALJ could have relied on in the record to support his finding, *see* Resp. at 26-29. That won't do, for largely the same reason that I am not permitted to make my own findings of fact. It is the ALJ who is the finder of fact, not the excellent appellate attorneys who represent the Commissioner before this court. Their after-the-fact explanation of why the record supports the ALJ's conclusion does not satisfactorily substitute for the ALJ's own analysis. *See Karstetter v. Kijakazi*, 2022 WL 16855565, at *8 (M.D. Pa. 2022);

---

[11] *See* https://my.clevelandclinic.org/health/drugs/19127-pregabalin-solution (accessed 1/3/2023).

[12] *See* https://my.clevelandclinic.org/search?q=meloxicam (accessed 1/3/2023).

[13] *See* https://my.clevelandclinic.org/health/drugs/20198-naproxen-delayed-release-tablets (accessed 1/3/2023).

[14] *See* https://www.mayoclinic.org/drugs-supplements/tramadol-oral-route/description/drg-20068050 (accessed 1/3/2023.

*Elizabeth N. v. Commissioner of Social Security Administration*, 2022 WL 10650250, at *6 (D. N.J. 2022); *Nichols v. Colvin*, 2015 WL 5255245, at *4 (W.D. Pa. 2015); *Griffies v. Astrue,* 855 F.Supp.2d 257, 272 (D. Del. 2012). While the Commissioner's take on the evidence is supportable, so would have been an RFC that adopted some of the pain related functional restrictions recommended by Dr. Berger. Depending on how restrictive those limitations were, they may have resulted in an RFC that triggered a finding of disability at steps four and five.

The only thing the ALJ himself said was that Dr. Berger's limitations were inconsistent with the doctor's 131-pages of treatment notes. R. 30. The ALJ provided no particulars about the purported inconsistencies.  The ALJ's cryptic explanation ignores substantial evidence contradicting his finding, *see Fargnoli v. Massanari*, 247 F.3d 34, 44 (3d Cir. 2001), and leaves me unable to meaningfully review his conclusion. *Burnett v. Commissioner of Social Sec. Admin.*, 220 F.3d 112, 119–20 (3d Cir. 2000).

The ALJ's explanation also fails to engage in the analysis required by the Social Security Administration's regulations. Though they provide an analytical framework for ALJs, these regulations do not "relieve the ALJ of the responsibility of adequately articulating the basis for a medical opinion evaluation." *Kenyon v. Saul*, 2021 WL 2015067, at *4 (M.D. Pa. 2021). "While the ALJ is ... not bound to accept physicians' conclusions, [she] may not reject them unless [she] first weighs them against other relevant evidence and explains why certain evidence has been accepted and why other evidence has been rejected." *Cadillac v. Barnhart*, 84 F. App'x 163, 168 (3d Cir. 2003) (quoting *Kent v. Schweiker*, 710 F.2d 110, 115 n.5 (3d Cir. 1983)) (internal quotation omitted).

The regulations state that supportability and consistency "are the most important factors we consider when we determine how persuasive we find a medical source's

medical opinions ... to be." 20 C.F.R. § 404.1520c(b)(2). Supportability means "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) ... the more persuasive the medical opinions ... will be." *Id.* at § 404.1520c(c)(1). The ALJ's explanation in this case fails to grapple with a diagnostic and treatment history, reflected in Dr. Berger's notes, that supports the pain related functional restrictions contained in his report.

Consistency means "[t]he more consistent a medical opinion(s) ... is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) ... will be." *Id.* at § 404.1520c(c)(2). The ALJ's explanation fails to evaluate the treatment history for pain found in Dr. Berger's notes against the rest of the evidence in the case. The Commissioner's brief does a painstaking job of this, but as I have said, I cannot substitute the Commissioner's after-the-fact analysis for the ALJ's own evaluation. This is especially so because the margin between a finding of disability and non-disability in this case is so thin, given Ms. Garcia's functional limitations and age. I have "grave doubt" whether the judgment was substantially swayed by the error. *Kotteakos*, 328 U.S. at 765.

I find that the error in assessing Dr. Berger's opinion is harmful and requires a remand.

**CONCLUSION**

For the reasons explained, I will enter judgment in favor of Ms. Garcia, remanding the case to the Commissioner for further proceedings.[15]

BY THE COURT:


*s/Richard A. Lloret*
**RICHARD A. LLORET**
**U.S. Magistrate Judge**

---

[15] Because I am remanding, I need not address the Constitutional claim raised by Ms. Garcia.